# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUNDRA RUBALCABA,<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>　　　　　　　Defendant. | CASE NO. 14cv1256-AJB-MDD<br><br>REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>[ECF NOS. 15, 21] |

　　Plaintiff Saundra Rubalcaba ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Supplement Security Income payments under Title XVI of the Social Security Act. Plaintiff moves the Court for summary judgment reversing the Commissioner and ordering an award of benefits (ECF No. 15). Defendant also has moved for summary judgment affirming the denial of benefits. (ECF No. 21).

# Background

## I. Factual Background

Plaintiff alleges that she became disabled on October 1, 2011, at the age of 42. According to Plaintiff, she suffers from liver problems, asthma, diabetes type 2, obesity, osteoarthritis of the bilateral knees, and lupus. (A.R. at 22). [1]

## II. Procedural History

On June 20, 2012, Plaintiff filed for supplemental social security income insurance payments under Title XVI of the Social Security Act, alleging disability beginning October 1, 2011. (A.R. at 20). Her claim was denied initially on August 16, 2012, and denied upon reconsideration on November 7, 2012. (*Id.*). On January 7, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on October 15, 2013, before ALJ Alan J. Markiewicz. (*Id.*). Plaintiff appeared and was represented by counsel. (*Id.*). Plaintiff and Vocational Expert Gloria Lasoff testified at the hearing. (*Id.*).

On November 27, 2013, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. at 20-29). Plaintiff appealed and the Appeals Council denied Plaintiff's request to review the ALJ's decision. (A.R. at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner.

On May 20, 2014, Plaintiff filed a Complaint with this Court seeking judicial review of the Commissioner's decision. (ECF No. 1). On October 14, 2014, Defendant answered and lodged the administrative record with the Court. (ECF Nos. 11, 12). On November 24, 2014, Plaintiff moved for summary judgment. (ECF No. 15). On January 21,

---

[1] "A.R." refers to the Administrative Record filed on October 14, 2014 and located at ECF No. 11.

2015, the Commissioner cross-moved for summary judgment and responded in opposition to Plaintiff's motion. (ECF Nos. 21, 22). On February 5, 2015, Plaintiff filed a Reply to Defendant's cross-motion for summary judgment. (ECF No. 24).

## Discussion

### I. Legal Standard

The supplemental security income program provides benefits to disabled persons without substantial resources and little income. 42 U.S.C. § 1383. To qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(A). The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382(a)(3)(B).

The Commissioner makes this assessment through a process of up to five-steps. First, the claimant must not be engaged in substantial, gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work. 20 C.F.R. § 416.920(d). If the claimant's impairment meets or is equivalent to the requirements for one of the listed impairments, benefits are awarded. 20 C.F.R. § 416.920(d). If the claimant's impairment does not meet or is not equivalent to the requirements of a listed impairment, the analysis continues to a fourth and possibly fifth step and considers the claimant's residual functional capacity. At the fourth step, the claimant's

relevant work history is considered along with the claimant's residual functional capacity. If the claimant can perform the claimant's past relevant work, benefits are denied. 20 C.F.R. § 416.920(e). At the fifth step, reached if the claimant is found not able to perform the claimant's past relevant work, the issue is whether claimant can perform any other work that exists in the national economy, considering the claimant's age, education, work experience, and residual functional capacity. If claimant cannot do other work that exists in the national economy, benefits are awarded. 20 C.F.R. § 416.920(f).

Section 1383(c)(3) of the Social Security Act, through Section 405(g) of the Act, allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 1383(c)(3), 405(g). The scope of judicial review is limited, however, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and

resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel. *Id.* (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

## II. The ALJ's Decision

In this case, the ALJ concluded that Plaintiff was not disabled as defined under the Act at any time on or after the date that the application was filed on June 20, 2012. (A.R. at 20). The ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).[2] The ALJ also found that Plaintiff had the residual

---

[2]"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). "If the claimant's condition meets or equals the level of severity of a listed impairment, the

functional capacity ("RFC") to perform light work as defined in 20 C.F.R 416.967(b) "but is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing or walking 6 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; cannot climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; cannot balance; can occasionally stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation and hazards." (A.R. at 24).

The ALJ found that Plaintiff's "subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of her symptoms." (A.R. at 27). The ALJ stated that despite the existence of her impairments, the RFC stated herein, "is the most that [Plaintiff] can do." (*Id.*). The ALJ specifically noted the following medical history to be of particular relevance:

2011: In July, Plaintiff was seen for left groin pain. (A.R. at 297). Plaintiff was examined and showed a supple neck, clear lungs, soft abdomen and normal mental functioning. It was noted Plaintiff had a probable fatty liver, and mild compression deformity of her T11 (although unlikely acute). (A.R. at 301). Plaintiff was discharged with a prescription for Motrin and Percocet. (*Id.*).

In September, Plaintiff was seen at urgent care for constant pain in the left upper quadrant (LUQ) of her torso. Her overall general appearance was cooperative and pleasant. Her neck was supple, her lungs showed no wheeze/rales. (A.R. at 291). Plaintiff had no heart murmurs and her CT scan was negative for diverticular disease. (*Id.*). On Plaintiff's second visit to urgent care, she was examined and found to be

---

claimant at this point is conclusively presumed to be disabled based on his or her [] condition." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

in mild distress similar to her previous visit with upper quadrant pain of her torso. (A.R. at 295). She denied headaches, chest pain, or shortness of breath. (*Id.*) Plaintiff's CT scan showed a stable enlarged liver. (A.R. at 305). She had no gallstones, unremarkable stomach, pancreas, adrenal glands, bladder or pelvic organs. (A.R. at 306).

2012: In February, Plaintiff was referred for cardiovascular evaluation due to chest pain. (A.R. at 313). Plaintiff was seen by Dr. Mehran Massavian, D.O., who noted Plaintiff was morbidly obese but in no acute distress. Her cardiovascular, pulmonary, GI and extremities evaluations showed no serious abnormalities. (A.R. at 316). The result of Plaintiff's Myocardial Perfusion study showed no abnormal findings. (A.R. at 316-319). Dr. Massavian recommended Plaintiff undergo a 2-D echocardiogram for further evaluation. (*Id.*).

In May, Plaintiff was referred for abnormal liver function tests despite a lack of symptoms. (A.R. at 323). Plaintiff stated she was doing well but had weight concerns. Dr. Taddesa Desta, M.D., examined Plaintiff and noted no abnormalities, including an appropriate mood and affect. (A.R. at 324). Dr. Desta's summary notes stated Plaintiff was stable overall with no active hepatitis. Dr. Desta opined a further work up was suggested for possible Autoimmune Hepatitis. (A.R. at 325). He also recommended weight loss and exercise. (*Id.*).

Plaintiff underwent additional tests in July regarding her abnormal liver function. (A.R. at 393). After a liver biopsy, the findings were overall stable and no active hepatitis.

Plaintiff was seen in October, by Dr. Gordon Zink-Brody, M.D. for a radiology consult. (A.R. at 375). Dr. Zink-Brody diagnosed advanced osteoarthritis of both knees and small right knee effusion. Neither knee had visible soft tissue swelling. (*Id.*).

1 | The ALJ also considered the medical records from 2012 through 2013 from Plaintiff's primary treating physician, Dr. Sharon Velasquez, M.D. A summary of Dr. Velasquez's medical notes considered by the ALJ follow:

2012: In January 2012, Plaintiff's asthma issues were addressed. (A.R. at 350). Plaintiff was counseled for smoking cessation and noted to be grossly overweight (i.e. obese). Dr. Velasquez noted Plaintiff's general appearance as normal, including her neck, lungs, heart, and abdomen. (*Id.*). In February of 2012, Plaintiff was newly diagnosed with diabetes type II. Plaintiff was also diagnosed with obesity. Dr. Velasquez again noted Plaintiff's general appearance as normal. (A.R. at 348). In March 2012, Dr. Velasquez saw Plaintiff on two separate occasions and both times noted Plaintiff's diabetes was uncontrolled but presented with a generally normal appearance. (A.R. at 343-346). In May of 2012, Plaintiff saw Dr. Velasquez three times. Dr. Velasquez's overall findings found Plaintiff's overall appearance normal. Plaintiff was advised regarding nutrition, exercise and smoking cessation. (A.R. at 340-342). In June 2012, Dr. Velasquez noted Plaintiff's diabetes type II was uncontrolled. Plaintiff complained of abdominal pain and was referred for tests. Plaintiff's asthma was moderately controlled. Dr. Velasquez noted that Plaintiff presented as obese and appeared to have a fatty liver. (A.R. at 339). She also had intermittent lower left quadrant pain. Dr. Velasquez counseled Plaintiff on nutrition and exercise. (*Id.*). Dr. Velasquez's September and November appointment notes state Plaintiff's diabetes is uncontrolled and Plaintiff alleges moderate to severe knee pain. (A.R. at 369, 398).

2013: In February, Dr. Velasquez noted Plaintiff's diabetes is still uncontrolled. (A.R. at 397). She reported Plaintiff's general appearance

1 as normal. (*Id.*). Plaintiff was advised on nutrition and exercise. In
2 September, Dr. Velasquez completed a Residual Functional Capacity
3 Questionnaire form received from Plaintiff's counsel. (A.R. at 429-432).
4 Dr. Velasquez cited to Plaintiff's knee pain, elevated glucose levels and
5 emotional health problems. (*Id.*). Dr. Velasquez stated Plaintiff's overall
6 prognosis was good but at that time her alleged physical impairments
7 were expected to last at least 12 months. (*Id.*). Dr. Velasquez opined
8 Plaintiff was limited to sitting not more than 2 hours at time, to standing
9 not more than five minutes; must walk every 90 minutes for five
10 minutes; and was limited to sitting not more than 6 hours with normal
11 breaks. (A.R. at 431). Dr. Velasquez also opined that Plaintiff has no
12 limitations with reaching, fingering, or handling, and would have 100
13 percent use of her hands, fingers and arms in an eight hour day. (A.R. at
14 432). Dr. Velasquez estimated that Plaintiff would miss at least two
15 days of work per month based upon her disabilities. (*Id.*).
16 In forming his RFC, the ALJ also considered the opinion of a
17 Vocational Expert (VE), Gloria Lasoff, who testified at Plaintiff's hearing.
18 (A.R. at 67-71).
19 **III. Plaintiff's Allegation of Error**
20 Plaintiff contends the ALJ improperly rejected the opinion of Dr.
21 Velasquez, a treating physician. (ECF No. 15 at 4). Plaintiff argues her
22 treating physician's opinions should be given controlling weight because
23 they are supported by substantial evidence and not inconsistent with
24 substantial evidence in the record. *Id.* (citing to Social Security Rule 96-
25 2p). Plaintiff claims "[t]he non-examining non-treating physician
26 opinions on which the ALJ gives great weight over the treating and
27 examining opinion does not provide any refuge for the ALJ's deficient
28 analysis." (ECF No. 24 at 4).

1	Defendant's position is that substantial evidence in the record
2	supported the ALJ's RFC finding.  Defendant cites 42 U.S.C. § 405(g) to
3	support his contention that "[t]he Commissioner's decision must be
4	affirmed on review if it was supported and based on proper legal
5	standards." (ECF No. 21 at 12).  According to Defendant, the ALJ
6	"provided specific and legitimate reasons for giving little weight to the
7	extreme limitations asserted by Plaintiff's treating physician, Dr.
8	Velasquez, finding her opinion was inconsistent with the evidence in the
9	record and not well supported." (*Id.* at 13).  Defendant contends that the
10	ALJ properly evaluated Dr. Velasquez's opinion and provided sufficient
11	justification for discounting the opinion. (ECF No. 21 at 19).  Defendant
12	states that the ALJ properly recognized that the objective evidence on
13	record did not support Dr. Velasquez's opinions.  (*Id.*).
14	The Ninth Circuit distinguishes among the opinions of three types
15	of physicians: (1) those who treat the claimant ("treating physicians"); (2)
16	those who examine but do not treat the claimant ("examining
17	physicians"); and (3) those who neither examine nor treat the claimant
18	("nonexamining physicians"). *Lester v. Chater,* 81 F3d 821, 830 (9th Cir.
19	1996).  As a general rule, more weight is given to the opinion of a treating
20	source than to that of a nontreating physician. *Id.* (citing *Winans v.*
21	*Bowen,* 853 F2d 643, 647 (9th Cir. 1987)).  Likewise, the opinion of an
22	examining physician is typically entitled to greater weight than that of a
23	nonexamining physician. *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir.
24	1990).
25	The Ninth Circuit examined the weight to be given a treating
26	source opinion in *Orn v. Astrue,* 495 F.3d 625 (9th Cir.  2007)   The Ninth
27	Circuit held:
28	> If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is

|   |   |
|---|---|
| 1 | inconsistent with other substantial evidence in the record, the Administration considers specific factors in determining the weight it will be given. Those factors include the 'length of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician. Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |

*Id.* at 631 (internal citations omitted).

Where a non-treating, non-examining physician's opinion contradicts the treating physician's opinion, the ALJ may only reject the treating physician's opinion "if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Jamerson v. Chater*, 112 F.3d. 1064, 1066 (9th Cir. 1997) (quoting *Andrew v. Shalala*, 53 F3d 1035, 1041 (9th Cir. 1995)). "The ALJ may meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Morgan v. Apfel*, 169 F.3d 595, 600-601 (9th Cir. 1999) (citing *Magallanes, supra*, 881 F.2d at 750)). Reports of consultative physicians requested by the Commissioner may serve as substantial evidence. *Andrews, supra*, 53 F.3d at 1041.

Here, the ALJ presented specific, legitimate reasons for not fully crediting Dr. Velasquez's opinion as a treating physician. In his analysis the ALJ cited to Dr. Velasquez's responses on the fill-in-the-blank Physical Residual Functional Capacity Questionnaire she completed on September 23, 2013. (A.R. at 26). The ALJ noted that Dr. Velasquez's prior conclusions were not consistent with her later responses to the questionnaire. Specifically, the ALJ found that "[t]he extreme limitations asserted by Dr. Velasquez are not consistent with the [Plaintiff's] conservative treatment record." (A.R. at 26). "While [Plaintiff]

has a number of medical problems, the record shows that each of these conditions is under fair to good control." (A.R. at 26). "These conditions are being managed with treatment...there is no evidence of complications from her asthma...she is not currently under active treatment for hepatitis C.... [and the] record reveals that overall [Plaintiff] is stable." (A.R. at 26). The ALJ also noted that "physical examinations of [Plaintiff's] knees showed palpable crepitus, no effusion, full range of motion, and no swelling." (*Id.*) The ALJ supported these findings by citing to the numerous health records including those from the San Ysidro Health Center where Plaintiff was treated, including treatment by Dr. Velasquez (A.R. at 338-365, 368-375, and 396-398).

Second, the ALJ noted that Dr. Velasquez's medical treatment records contain "relatively meager findings" resulting from her examinations of Plaintiff. (*Id.*). For example, Dr. Velasquez's treatment notes regularly describe Plaintiff's overall/general appearance as normal despite Plaintiff's obesity, uncontrolled glucose levels, asthma complaints and allegations of knee pain. (A.R. at 398, 350, 348, 346, 342, 339). Indeed, Plaintiff's treatment for her weight and uncontrolled diabetes, other than medication, was limited to regular referrals for health and nutrition education. (A.R. at 340). Plaintiff's asthma was controlled with medication and regular advisements for smoking cessation. (A.R. at 339, 341, 351). The ALJ also noted that Plaintiff's own testimony revealed she has not received treatment for hepatitis C, she had not yet seen a rheumatologist and she did not have a heart problem. (A.R. at 46, 67 ). In addition, Plaintiff testified that she was not taking any anti-depression medication. (A.R. at 44-54). Based on this record, the ALJ found that Dr. Velasquez's completed questionnaire is not consistent with her own treatment records.

Acknowledging the preference of treating physicians opinions over other medical source opinions, the ALJ stated, "it is possible in a particular case, depending on all the facts of that case, to give greater weight to the opinion o f a non-examining source." (A.R. at 27 citing 20 C.F.R. 404.1527 and 416.927). With this general preference in mind, the ALJ set forth specific and legitimate reasons based on substantial evidence in the record for giving less weight to Dr. Velasquez's opinions than to the opinions of medical consultants, Dr. G. Spellman, M.D. and Dr. V. Michelotti, M.D. "The opinions of non-treating or non- examining physicians may [] serve as substantial evidence when the opinions are consistent with independent clinical findings, or other evidence in the record." *Thomas v. Barnhart*, 278 F3d. 947, 957 (9th Cir. 2002). "Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include . . . the degree of understanding a physician has of the Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record." *Orn v. Astrue*, 495 F.3d at 631.

Here, the ALJ found that the RFC of light work corroborated by Drs. Spellman and Michelotti "is supported by the evidence as a whole." (A.R. at 27). The ALJ opined that these opinions appear the most consistent with the entire record. (*Id.*). Specifically, the ALJ stated:

> These physicians are highly trained and experts in social security disability evaluations in evaluating disability claims and had the benefit of reviewing the longitudinal treatment record from multiple providers as well as the objective testing and the claimant's written subjective complaints prior to formulating their opinions.

(*Id.*).

The ALJ cited to Dr. Spellman's report that found Plaintiff had normal movement in all joints, no joint swelling; no significant neuropathic/vision complaints. Dr. Spellman also found Plaintiff's

asthma was controlled, her hepatitis was stable, stomach problems and fatty liver stable, and despite her bad circulation her gait was normal. (A.R. at 366-67). Dr. Spellman recommended that Plaintiff's RFC should take into consideration her obesity, cardiac issues and moderately controlled asthma. (*Id.*). The ALJ also cited to Dr. Michelotti's opinion, who performed a consultive assessment and found Plaintiff not disabled and assigned a light RFC. (A.R. at 84-92). Specifically, Dr. Michelotti found Plaintiff's limitations are due to diabetes/morbid obesity and that her moderately advanced osteoarthritis (OA) in her knees is "most likely exacerbated by her weight." (A.R. at 87). Dr. Michelotti also noted her OA is being treated with tyelnol and motrin and diabetes is "poorly controlled." (*Id.*). According to Dr. Michelotti "[t]hese conditions can be reasonably better medically controlled." (*Id.*). Dr. Michelotti concurred that a light RFC is appropriate. (*Id.*).

In her Reply, Plaintiff contends that, contrary to the ALJ's assertions, the opinions of the nonexamining medical consultants are in accordance "with the diagnosis of Dr. Velasquez's clinical findings as to what severe limitations [Plaintiff] suffers from." (ECF No. 24 at 7). However, as the ALJ explained, Dr. Spellman and Dr. Michelotti had the "benefit of reviewing the longitudinal treatment record from multiple providers as well as the objective testing and the claimant's written subjective complaints prior to formulating their opinions," and "their opinions appear to be the most consistent with the totality of the evidence." (A.R. at 27). As noted herein, the ALJ specifically identified the inconsistencies in Dr Velasquez's treatments notes compared to her opinion presented in the RFC questionnaire. As explained by the ALJ, it was due to these inconsistencies that the opinions of Dr. Spellman and Dr. Michelotti were given greater weight. (A.R. at 26-27, 429-432).

It is well settled that "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti,* 533 F.3d at 1041-42.  The ALJ's findings of fact and conclusions of law reflect his consideration of the total medical evidence of record.   The treatment records cited by the ALJ of Plaintiff's numerous physical examinations and tests show her overall condition normal, unremarkable, stable, including an appropriate mood and affect. (A.R. at 297, 305, 314, 316-319, 324-325, 375, 393).  The Court's review revealed no ambiguity or error indicating that the record was not sufficiently developed.  Accordingly, the Court finds the ALJ's findings of fact and conclusions of law, including Plaintiff's residual functional capacity, is supported by substantial evidence and free of legal error and recommends Plaintiff's claim on this issue be DENIED and Defendant's motion for summary judgment be GRANTED.

### IV. Conclusion

As the Court finds that the ALJ did not commit reversible error, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** and that Defendant's Motion be **GRANTED**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS HEREBY ORDERED** that any written objection to this REPORT must be filed with the Court and served on all parties no later than **September 2, 2015**.  The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 9, 2015**.  The parties are advised that failure to file

objections within the specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 19, 2015

Hon. Mitchell D. Dembin
U.S. Magistrate Judge